[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2010
JOHN LEY
CLERK

No. 09-13766
Non-Argument Calendar
_____

Agency No. A070-704-012

WEN-XING WANG,

                                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 13, 2010)

Before EDMONDSON, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Wen-Xing Wang, a citizen of China, petitions for review of the Board of

Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of his motion to reopen his removal proceedings. Wang's April 25, 2008 motion to reopen was based on his claim that country conditions in China have changed since the BIA's August 31, 2006 removal order because China has increased enforcement of its family-planning sterilization policies. Because Wang has two children, he contends that he would be subject to forced sterilization if he returned to China. After review, we deny Wang's petition.[1]

An alien may file one motion to reopen removal proceedings, and that motion must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." Immigration and Nationality Act ("INA") § 240B(c)(7)(A), (B), 8 U.S.C. § 1229a(c)(7)(A), (B). Generally, the motion to reopen must be filed within ninety days of the BIA's final administrative removal order. INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, the ninety-day deadline and one-motion limit do not apply if the motion to reopen is based on changed country conditions. INA § 240(c)(7)(C)(ii), 8 U.S.C.

---

[1] We review the denial of a motion to reopen for abuse of discretion. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Review is "limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (quotation marks omitted). Where, as here, the BIA expressly adopted the IJ's reasons for the ruling, we review the IJ's and the BIA's decisions. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

§ 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Because motions to reopen are disfavored, especially in removal proceedings, the movant bears a "heavy burden." Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). To meet the exception to the ninety-day filing deadline, the movant must show that there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing. See 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3); see also Verano-Velasco v. U.S. Att'y Gen., 456 F.3d 1372, 1376 (11th Cir. 2006); Abdi, 430 F.3d at 1149. Evidence is not "new" if it was available and could have been presented at the aliens former hearing. Verano-Velasco, 456 F.3d at 1372. To be "material," the evidence must be the kind that, if the proceedings were reopened, would likely change the result in the case. See Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006). Thus, the BIA may deny a motion to reopen because the alien failed to submit evidence that was material and previously unavailable. See Al Najjar, 257 F.3d at 1302.

We have concluded that evidence of a recent increased campaign of forced sterilization in the alien's home village may satisfy the changed country conditions requirement for filing a motion to reopen outside the ninety-day filing deadline. See, e.g. Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1254 (11th Cir. 2009); Li v. U.S. Att'y Gen., 488 F.3d 1371, 1375 (11th Cir. 2007). On the other hand, the birth of a

3

child constitutes a change in personal circumstances, not a change in country conditions, and does not satisfy the requirement. See 8 C.F.R. § 1003.23(b)(4)(i) (requiring motions to reopen after the ninety-day deadline to be "based on changed country conditions arising in the country of nationality").

Here, the IJ and the BIA did not abuse their discretion in denying Wang's motion to reopen because Wang's evidence either was previously available or did not demonstrate an increased campaign of forced sterilization in his home village. Wang does not dispute that his motion was filed outside the ninety-day filing deadline and that he needed to present evidence of changed country conditions post-dating his 2006 removal proceedings in order for his motion to be granted.[2]

A review of the record shows that, unlike the petitioners in Li and Jiang, cited above, Wang's evidence did not demonstrate that enforcement of the one-child policy through forced sterilizations has increased in his home village of Fuqi Village, Houyu Town, Changle City in Fujian Province since the August 31, 2006 order granting him voluntary departure.[3] A number of Wang's documents pre-dated his original asylum claim or referenced information that predated his asylum

---

[2]In 2003, Wang filed his asylum application, alleging religious persecution. Wang later withdrew his application with prejudice, was granted voluntary departure on August 31, 2006 and was ordered to depart the country by December 29, 2006. Wang did not depart and filed this motion to reopen on April 25, 2008. Thus, Wang's evidence in support of his motion to reopen must show a change in conditions in China since the BIA's August 31, 2006 order.

[3]Contrary to Wang's assertion, the BIA considered each piece of evidence Wang submitted and concluded that his evidence was insufficient to meet Wang's burden of proof.

application. This evidence was not "previously unavailable" and did not aid his current motion to reopen. Other documents either: (1) detailed enforcement of China's family planning laws in other provinces, but did not address the enforcement of the family planning laws in Wang's home province of Fujian; or (2) failed to state any change in the enforcement of the family planning laws from previous years. In sum, while most of Wang's evidence shows that Chinese officials continue to enforce family planning policies, including some forced sterilizations, it does not show an escalation of enforcement in Wang's home village.

Wang submitted several documents that relate specifically to family planning policies in Fujian Province or in Wang's home village. However, most of these documents did not demonstrate a material change in enforcement. For example, one document, a proclamation to individual district and city planning committees, was a reminder to implement the goals and practices of the policies. As the BIA explained, nothing in the proclamation indicates that implementation of the goals and practices was a change in policy. Another document was a March 2008 notice from the "Villagers' Committee" in Wang's home village responding to Wang's inquiry. The notice stated that, under the family planning policy, Wang would be required to undergo sterilization upon his return because he has two children. Although the BIA gave little weight to this document because it was

5

unauthenticated, it also noted that the document failed to indicate that this enforcement of the family planning policy post-dated Wang's removal proceedings. In other words, the notice does not indicate that the policy is being more strictly enforced since August 31, 2006.[4]

Wang also submitted two documents that do suggest an increase in enforcement of the family planning policies. First, Wang submitted a March 2007 article from a newspaper in a different county and town in Fujian. The article explains that 2007 is the "year of the 'golden pig'," which the Chinese view as an auspicious year to have a child. According to the article, provinces, including Fujian, were tightening their family planning policies in anticipation of a baby boom. The article noted that "several towns openly force the over-birth pregnant women to undergo abortion and sterilizations" and women with two daughters are also subjected to sterilization. The BIA found that this stricter enforcement was limited to the year 2007 and "not a permanent change to the population control policies of the region." Given the entire context of the article, this finding is not arbitrary or capricious.

Second, Wang submitted a March 2008 affidavit from his mother stating that

---

[4]Citing opinions from other circuits, Wang argues that the BIA could not reject this document solely because it was unauthenticated. See, e.g., Zheng v. Gonzales, 500 F.3d 143 (2d Cir. 2007). Even assuming arguendo that Wang is correct, the BIA did not rely solely upon the lack of authentication.

"[i]n the past year, the Family Planning Law was more strictly implemented in our hometown" and stated that one woman was forced to undergo a sterilization operation on March 10, 2007. The BIA found that this affidavit was unsubstantiated and based on anecdotal evidence. The affidavit, while making a general assertion that the family planning policy was being more strictly enforced, provided only one example and offered no additional support or corroboration for this opinion.[5] We cannot say the BIA's decision to discount the affidavit was arbitrary or capricious.[6]

Because Wang failed to provide material, previously unavailable evidence of changed country conditions since August 31, 2006, the BIA did not abuse its discretion in denying his motion to reopen.[7]

---

[5]We do not read the BIA's rationale for discounting the affidavit as a credibility determination. Rather, as we read the BIA's ruling, the BIA gave the affidavit little weight because it averred a conclusory statement without offering sufficient support for it. As a general principle, it is well-settled that conclusory, unsupported allegations in an affidavit are not sufficiently probative to establish a fact. See, e.g., Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). Given the problems with the rest of Wang's documentary evidence, we cannot say the BIA abused its discretion when it concluded that this one affidavit was insufficient to carry Wang's heavy burden to show an escalation in forced sterilizations in his home village.

[6]The BIA properly concluded that the birth of Wang's second child did not provide a basis for granting his motion to reopen, as this constituted a change in personal circumstances not country conditions. See 8 C.F.R. § 1003.23(b)(4)(i).

[7]To the extent Wang argues that he is prima facie eligible for asylum and withholding of removal, we do not consider these claims because Wang failed to meet the requirements for granting his motion to reopen. See Chen v. U.S. Att'y Gen., 565 F.3d 805, 810 (11th Cir. 2005) (concluding that an alien cannot file a successive asylum application except as part of a properly filed motion to reopen).

**PETITION DENIED.**