In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2427

XING ZHENG,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
A070 583 126

ARGUED JANUARY 23, 2013—DECIDED MARCH 27, 2013

Before POSNER and WILLIAMS, *Circuit Judges*, and
NORGLE, *District Judge.*[*]

WILLIAMS, *Circuit Judge.* Petitioner Xing Zheng argues
that the Board of Immigration Appeals ("BIA") erred in

---

[*] The Honorable Charles R. Norgle, Sr., District Judge for the
United States District Court for the Northern District of
Illinois, sitting by designation.

denying his motion to reopen his immigration case because it found that Zheng failed to show that China's conditions had materially changed for Christians without any reasoned explanation. We agree that the BIA's conclusory rejection of Zheng's argument was error, but we find that the error was harmless. Given the highly generalized nature of Zheng's evidence, which failed to show with any meaningful level of specificity that the persecution against Zheng's practice of Christianity had materially worsened since 1999, the BIA could have reasonably concluded that such evidence was insufficient. We therefore deny Zheng's petition for review.

## I. BACKGROUND

Xing Zheng, a native of Fuzhou City in the Fujian Province of China, arrived in the United States in 1991 and filed an application for asylum the following year, which was denied. The INS charged him with removability in 1998, but Zheng renewed his request for asylum, asserting that his wife (who arrived from China in 1994 and whom he married in 1995) would be forcibly sterilized under China's one-child policy because they already had two children (born in 1996 and 1998, respectively). The immigration judge denied his application in 1999, relying in part on Zheng's lack of credibility, and the BIA affirmed in 2002. Over the next several years, Zheng managed to remain in the United States and filed three motions to reopen his immigration case. The BIA denied the motions because they were untimely (and successive with respect to the

second and third motions) and because Zheng failed to demonstrate changed country conditions as to forced sterilization that would justify an exception to the statutory bar against untimely and successive motions to reopen. *See* 8 U.S.C. § 1229a.

In September 2011, Zheng filed a fourth motion to reopen, the one at issue in this appeal, except this time he argued that he would be persecuted in China because he is a Christian. He did not argue this before because he said he converted to Christianity in 2010 while in immigration detention, which was supported by evidence including the fact that he and his family were baptized at the First Chinese Free Methodist Church. He asserted that he and his family wish to "continue spreading the message of Christianity to others, and to teach them how to accept the redemption he ha[s]." He also submitted evidence which he claimed showed that China's treatment of Christians had materially worsened since 1999.

Without questioning the sincerity of his alleged conversion, the BIA denied Zheng's motion to reopen. After setting forth the proper legal standards and summarizing Zheng's evidence and arguments, the BIA's rejection of Zheng's argument amounted to the following statements:

> The respondent has shown changed personal circumstances, but the evidence and assertions presented in support of this motion do not demonstrate materially changed conditions in China pertinent to this claim since the 1999 hearing,

especially in view of evidence before the Immigration Judge. *See, e.g.,* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* (April 14, 1998) (describing the suppression of unregistered religious groups, including underground churches and "house church" Protestants, arrests and beatings of religiosu leaders, demolition of property, etc.). Therefore, the Board finds that the exception for untimely and number-barred motions to reopen is inapplicable to the respondent's case.

Zheng petitioned for review. Along with his petition, Zheng submits updated evidence of purported changed country conditions, including the State Department's 2011 International Religious Freedom Report, which stated that China's "respect for and protection of the right to religious freedom deteriorated," that unregistered religious organizations were not allowed to hold worship services, and that "[p]roselytizing in public" was forbidden. The evidence also includes the State Department's 2011 Human Rights Report on China, which stated that "[d]eterioration in key aspects of the country's human rights situation continued," noting that "politically sensitive" individuals faced restrictions on their freedom to "practice religion."

## II. ANALYSIS

Section 1229a(c)(7) of Title 8 of the United States Code and its implementing regulation, 8 C.F.R. § 1003.2(c),

provide that as a general matter, only one motion to reopen may be filed and it must be filed within 90 days of the date of entry of a final administrative order of removal. However, these time and number limits do not apply to motions to reopen for the purpose of applying for asylum if the movant shows "changed country conditions in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see Gebreeyesus v. Gonzales*, 482 F.3d 952, 954 (7th Cir. 2007). The parties do not dispute that under these standards, Zheng was required to show that China's conditions materially worsened for Christians since 1999 when his first immigration hearing was held, even though Zheng was not a Christian in 1999.[1]

If the BIA denies a motion to reopen, we will not find error "'unless [the BIA decision] was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Moosa v. Holder*, 644 F.3d 380, 384 (7th Cir. 2011) (citation omitted). The BIA is required "to issue opinions with rational explanations and adequate

---

[1] Part of Zheng's brief appears to suggest that changed *personal* circumstances, such as Zheng's alleged conversion, might justify granting a motion to reopen. We rejected such an argument in *Cheng Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007).

analysis of the record, and to announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Gebreeyesus*, 482 F.3d at 954 (citations and quotation marks omitted).

Here, the BIA's decision rejected Zheng's argument without an adequate analysis of the record. The BIA simply stated that "the evidence and assertions presented in support of this motion do not demonstrate materially changed conditions in China since the 1999 hearing," but gave no explanation as to why. It summarily listed the evidence presented by Zheng and then emphasized and cited one piece of evidence of religious persecution that was available in 1999, but made no comparison between the 1999 evidence and Zheng's more recent evidence to explain why no changed country circumstances were shown. The government argues that the record was sufficient to support the BIA's decision, but "the government may not defend the BIA's decision on grounds that are not stated—or at least discernible—in the decision itself." *Gebreeyesus*, 482 F.3d at 956. And it points to nothing in the BIA order from which we may discern why it believed that Zheng's more recent evidence did not pass muster.

Nonetheless, we must deny Zheng's petition because any error was harmless. *See Tariq v. Keisler*, 505 F.3d 650, 657 (7th Cir. 2007).[2] Though Zheng submits a fair

---

[2] Zheng asserts, and the government does not dispute, that in assessing harmless error we may consider evidence of

(continued...)

amount of evidence demonstrating poor conditions for certain types of Christians today, such as evidence that proselytizing (which Zheng wishes to do) is forbidden, the only evidence that conditions *materially worsened since 1999* amounts exclusively to the statements that protections for religious freedoms "deteriorated." Such highly generalized statements simply do not satisfy Zheng's burden. *Cf., e.g.*, *Moosa*, 644 F.3d at 387 ("[G]eneral conditions of hardship that affect entire populations . . . are not persecution." (quotation marks and citation omitted)); *Iglesias v. Mukasey*, 540 F.3d 528, 532 (7th Cir. 2008) (single general statement about the "happily married couple" was insufficient to demonstrate bona fide marriage). Zheng points to nothing in the reports, for example, that shows in what time frame conditions deteriorated, how conditions specifically deteriorated for those who practice Christianity in the manner that Zheng wishes to practice, or whether such persecution intensified in or around the region where Zheng expects to live. *Cf. Moosa*, 644 F.3d at 387 (evidence of "broad social strife" occurring nearly 900 miles away from petitioner's hometown was insufficient). Zheng points to evidence showing that conditions have worsened for attorneys who defend persecuted Christians, but he does not assert that he is an

---

(...continued)

country conditions as they exist currently, which means we may consider Zheng's updated evidence which did not exist at the time of the BIA decision. *See Giday v. Gonzales*, 434 F.3d 543, 556 n.6 (7th Cir. 2006).

attorney. He points to evidence that China persecutes unregistered churches, but the evidence does not show how that persecution specifically worsened since 1999 or before, and more importantly, he does not allege that he belongs to, or would join, an unregistered church. In sum, none of the evidence illustrates with any meaningful level of specificity how China's treatment of those who practice Christianity as Zheng wishes to do actually worsened from 1999 or before until today. "[B]ecause the BIA could have reasonably concluded" that Zheng failed to demonstrate materially changed circumstances, "we need not remand because the alleged legal error was harmless." *Iglesias*, 540 F.3d at 532-33.

## III.  CONCLUSION

For the above-stated reasons, we DENY Zheng's petition for review.